UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANDREW W. GOAR,                          )
          *Plaintiff*,                          )
                                         )
          *vs*.                          )          1:13-cv-00919-JMS-DKL
                                         )
FEDERATED LIFE INSURANCE COMPANY,        )
          *Defendant*.                          )

## **ORDER**

Presently pending before the Court in this insurance coverage action are: (1) Defendant

Federated Life Insurance Company's ("Federated") Motion for Summary Judgment, [Filing No.

72]; and (2) Plaintiff Andrew Goar's Motion for Partial Summary Judgment, [Filing No. 96].

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear,

whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the

asserted fact by citing to particular parts of the record, including depositions, documents, or affi-

davits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials

cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot

produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or decla-

rations must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure

to properly support a fact in opposition to a movant's factual assertion can result in the movant's

fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

## II.
### BACKGROUND

The Court notes at the outset that Mr. Goar has not complied with Local Rule 56-1(b), which provides that a response to a motion for summary judgment "must include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." While Mr. Goar includes a section titled "Facts Not In Dispute" in support of his cross motion for partial summary judgment, [Filing No. 97 at 8], he does not specifically identify facts that he is disputing in connection with Federated's Motion for Summary Judgment, [*see* Filing No. 97 at 29-49]. Instead, Mr. Goar provides his version of events, but without tying it to alleged inaccuracies

in Federated's Statement of Material Facts Not in Dispute. This approach does not comply with Local Rule 56-1(b), and has made review of the cross motions unnecessarily cumbersome.[1]

The Court has attempted to sift through Mr. Goar's version of events, determine which facts set forth by Federated he disputes, and construe disputed facts in his favor in connection with Federated's motion when he has provided citations to evidence in the record. But failure to comply with Local Rule 56-1(b) can result in a concession of the movant's version of events. *See, e.g.*, *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (the Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts").

The Court finds the following to be the undisputed facts, supported by proper citation to admissible evidence in the record:

### A. Mr. Goar's Health

In August 2005, Mr. Goar was working as a goldsmith, doing repair work, and performing some managerial duties at Smith's Jewelers, a store owned and operated by his family. [Filing No. 97-4 at 48-49.] On August 2, 2005, Mr. Goar went to the Henry County Memorial Hospital Emergency Room complaining of numbness in his left arm and face. [Filing No. 97-3 at 54.] He

---

[1] Mr. Goar has also cited incorrectly to his exhibits. The Court's Practices and Procedures provide that "[i]n a supporting brief, cite to the docket number, the attachment number (if any), and the applicable .pdf page as it appears on the docket information located at the top of the filed document…When citing to deposition transcripts, cite to the specific page and line numbers of the deposition in addition to the docket number and page number citation format set forth above." [Filing No. 106 at 4.] Mr. Goar has not complied with this practice, and sometimes cites to the incorrect docket entry altogether. [*See, e.g.*, Filing No. 97 at 17 (citing to "dkt. 97-2" for statements made by Van Goar, which are actually contained in docket entry 97-3).] This failure to follow the Court's Practices and Procedures, and to point the Court correctly to evidence cited, has significantly complicated the Court's review of Mr. Goar's briefs.

had experienced those same symptoms three times that past week. [Filing No. 97-3 at 59.] The emergency room physician diagnosed Mr. Goar with paresthesia, and instructed Mr. Goar to follow up with two other physicians. [Filing No. 97-3 at 53-55.]

Mr. Goar saw Dr. Dawn Zapinski on August 11, 2005, complaining of left arm numbness. [Filing No. 97-3 at 59-61.] Dr. Zapinski ordered neurological tests, and saw Mr. Goar again on August 18, 2005. [Filing No. 97-3 at 61-62.] While the results of the EMG of Mr. Goar's left arm were normal, an MRI of his brain showed "a few scattered white matter lesions around the ventricles, which is unusual for his age." [Filing No. 97-3 at 62.] Dr. Zapinski was concerned about demyelinating disease, and told Mr. Goar during an August 18, 2005 visit that she wanted him to undergo a lumbar puncture to hopefully rule out multiple sclerosis. [Filing No. 97-4 at 62-63.] During the August 18, 2005 visit, she explained to Mr. Goar that multiple sclerosis was "at the top of [her] differential" of his possible diagnoses. [Filing No. 81 at 6.]

**B. The Federated Application**

On August 24, 2005 – just six days after Dr. Zapinski told him she suspected he had multiple sclerosis and ordered diagnostic testing – Mr. Goar completed a Federated Life and Disability Income Application (the "Application"), which was filled out by Richard Lemming, a Federated agent. [Filing No. 97-3 at 89; Filing No. 97-3 at 105-110.] Under the heading "Medical Information" in the Application, Mr. Goar provided the following information:

· Mr. Goar listed his personal physician as "Spiceland Pike Medical Center," and listed his last visit there as "2004 – cyst on face";

· In a blank for "All Current Medications," Mr. Goar checked a box marked "NONE";

· Mr. Goar wrote a line to indicate he had no response for a blank for "Other medical providers seen in the past five years (include doctors, chiropractors, and therapists, date last seen and reason)";

- Mr. Goar responded "no" to the question "Within the past 5 years, have you had, been told you had, or received treatment for any of the following conditions:…Brain or Nervous System Disorder; Multiple Sclerosis; Epilepsy or Seizures";

- Mr. Goar responded "no" to the question "Within the past 90 days, have you been admitted to a hospital or other medical facility, been advised to be admitted; had surgery performed or recommended; or been advised to have a diagnostic test other than an HIV test?"; and

- Mr. Goar responded "no" to the question "Within the past 5 years, have you had treatment for…[a] nerve or nervous system disorder."

[Filing No. 73 at 20.]

Mr. Goar signed the Application to indicate that he understood and agreed, among other things, that:

- "I represent that the statements and answers given in this application are true, complete, and correctly recorded"; and

- "I will inform [Federated] of any changes in the proposed insured's health, mental or physical condition, or of any changes to any answers on this application, prior to or upon delivery of this policy."

[Filing No. 73 at 22.]

A Federated representative interviewed Mr. Goar on August 30, 2005 as part of the underwriting process. [Filing No. 42-2 at 2.] When the Federated representative asked Mr. Goar "Have you seen any other doctors, chiropractors, specialist[s] or therapists in the last 5 years including any medication, treatment or therapy?," Mr. Goar provided information which the Federated representative noted was "greater than 4 weeks ago, ER visit, Henry County Memorial Hospital, New Castle, IN., for pain in left arm, thinking heart related. MRI was done, it was not heart or stroke related, but cause was undetermined. He was told to come back if persists. He has not had any further problems." [Filing No. 42-2 at 2.] Mr. Goar did not disclose his treatment with Dr. Zapinski to the Federated underwriter during the August 30, 2005 interview. [Filing No. 42-2 at 2.]

### C.  Mr. Goar's Diagnostic Tests and Further Appointments With Dr. Zapinski

Mr. Goar underwent the lumbar puncture that Dr. Zapinski had ordered, and met with Dr. Zapinski on September 23, 2005 to discuss the results.  [Filing No. 81 at 7-8; Filing No. 81 at 16-17.]  During that office visit, Dr. Zapinski discussed with Mr. Goar her belief that he had multiple sclerosis and treatment for the disease.  [Filing No. 97-3 at 65 (Dr. Zapinski noting that "I had a long discussion with [Mr. Goar], his wife and his father today about multiple sclerosis, its prognosis and treatment….I also gave him some information on multiple sclerosis including pamphlets and numbers of the MS Society"); Filing No. 81 at 7.]  Dr. Zapinski's notes for Mr. Goar's September 23, 2015 visit summarize her impressions:  "Intermittent left upper extremity numbness and tingling; MRI of the brain on August 13th does show scattered white matter lesions around the ventricles as well as a lesion at C2 on the cervical spine MRS.  Coupled with the CSF results, this is most likely multiple sclerosis."  [Filing No. 97-3 at 318-19.]  At the September 23, 2005 visit, Dr. Zapinski also gave Mr. Goar a kit for two multiple sclerosis medications – Copaxone and Betaseron.  [Filing No. 81 at 7-8.]  The kit contained general information about multiple sclerosis and specific information about the medications.  [Filing No. 81 at 8.]

### D.  The Policy and Acknowledgement

Federated issued a disability policy to Mr. Goar, effective October 4, 2005 (the "Policy"). [Filing No. 73 at 4-16.]  The Policy covers "Total Disability," which is defined as follows:

Total Disability

You'll be considered totally disabled if because of sickness or injury:

a.   you are under the regular and personal care of a physician; and

b.  you are unable to perform the substantial and material duties of your regular occupation; and

c.  you are not engaged in any other occupation for wage or profit; and

d.  you are unable, after the first 3 years of your total disability, to work in any occupation for which you are suited through education, training or experience.

[Filing No. 73 at 8.]

The Policy also provides, in relevant part:

Notice of Disability

Written notice of your disability must be sent to our Home Office or to our representative.  Send it within 60 days after the start of disability or as soon as reasonably possible, in any event, the required notice must be given no later than one year from the date of disability unless you were not then competent to make the claim.  There is no required form, but notice must include your name and should include the policy number.

[Filing No. 73 at 10.]

Contesting Your Policy

We may not contest this policy after it has been in force for 2 years during your lifetime.  This does not apply to any fraudulent misrepresentation in your application.  We won't use any misstatements in your application to deny a claim for benefits if your disability begins after such a 2 year period.

[Filing No. 73 at 11.]

Pre-existing Condition Limitations

This policy does not provide benefits for disability resulting from a pre-existing condition during the first 2 years from the policy date, unless the condition was disclosed fully and accurately in the application, and is not excluded from coverage by name or specific description.

[Filing No. 73 at 11.]

Mr. Goar signed an Acknowledgement of Acceptance and Delivery of Policy (the "Acknowledgement") on October 19, 2005 – twenty-six days after Dr. Zapinski advised Mr. Goar that she believed he had multiple sclerosis and prescribed medication used to treat multiple sclerosis.  [Filing No. 73 at 23-24.]  The Acknowledgement states "Sign below ONLY after you have read, understand and agree to each of the following terms or conditions," which include:

- "To the best of my knowledge and belief, the Application as enclosed in this policy remains true, accurate and complete, except as amended below or on PAGE 3 of the Policy";

- "I am not aware of any information, other than disclosed in the Application, which might affect the Company's willingness to make this offer"; and

- "I represent that there have been no changes in (a) my health, or (b) the way I would respond to any question (if again asked on the date signed below)."

[Filing No. 73 at 23.]

### E. Mr. Goar's Continued Medical Treatment

Mr. Goar saw Dr. Zapinski on December 1, 2005, and she referred him to Dr. David Mattson for a second opinion.[2] [Filing No. 97-3 at 64-65.] Mr. Goar had an initial appointment with Dr. Mattson in early 2006, and continued to see Dr. Mattson on a regular basis thereafter. [Filing No. 97-4 at 137.]

### F. Mr. Goar Stops Working at Smith Jewelers and Collects Unemployment

By the spring of 2010, Mr. Goar's brother observed that Mr. Goar was experiencing problems with steadiness on his feet, grip strength, dexterity, and fine motor skills in his hands, all of which he attributed to multiple sclerosis. [Filing No. 97-3 at 10.] By October 2010, Mr. Goar, along with his brother and father – who also owned and operated Smith's Jewelers – decided to terminate Mr. Goar's employment at Smith's Jewelers. [Filing No. 97-3 at 10.] Mr. Goar immediately applied for unemployment benefits, and began receiving benefits within a month of his application. [Filing No. 80 at 35.] In order to receive unemployment benefits, Mr. Goar represented to the State of Indiana that he was able and available to work. [Filing No. 80 at 38-39.]

---

[2] Mr. Goar asserts that Dr. Zapinski "definitely diagnosed his chief complaint and impression as multiple sclerosis" at the December 1, 2005 appointment. [Filing No. 97 at 16.] But Dr. Zapinski's notes from that day indicate that she had already diagnosed him with multiple sclerosis. She noted that Mr. Goar "has been sad at times as he adjusts to the diagnosis," and that Mr. Goar was already taking Copaxone for his symptoms. [Filing No. 97-3 at 66.]

During that time, Mr. Goar looked for work, but not as a jeweler. [Filing No. 80 at 39.] From 2012 to the present, Mr. Goar has not had the stamina to seek, or engage in, employment. [Filing No. 97-4 at 137.]

### G. The Notice of Claim and Federated's Response

On May 17, 2012, Federated received a phone call in which the caller stated that Mr. Goar wanted to make a claim for disability under the Policy. [Filing No. 75 at 1.] On May 21, 2012, Federated sent Mr. Goar a claim packet with the claim forms he needed to complete to initiate a claim under the Policy. [Filing No. 75 at 1.] Mr. Goar completed and signed a claim packet on May 31, 2012, and Federated received it on June 26, 2012. [Filing No. 75 at 1-2; Filing No. 75 at 4-13.] The claim packet contained a blank for "first date that you missed work continuously due to condition," and Mr. Goar did not fill out that blank. [Filing No. 75 at 6.]

On July 3, 2012, Laura Strawmatt, a Federated Life & Disability Income Claims Specialist, conducted an interview of Mr. Goar which was recorded with his consent. [[Filing No. 75 at 2; Filing No. 75 at 14-30.] Mr. Goar told Ms. Strawmatt that the last day he worked was at the end of September 2010, and that he had not worked since then. [Filing No. 75 at 22-23.] When Ms. Strawmatt asked Mr. Goar if he was "claiming a disability benefit back to September of 2010," Mr. Goar replied "Well, I'm not, no, well no not really. Not necessarily." [Filing No. 75 at 23.] Ms. Strawmatt asked Mr. Goar when he was claiming his disability benefits under the Policy should start from, and he replied "Um, well, it's my understanding that, the doctor, my doctor said I was disabled back in January." [Filing No. 75 at 23.] Ms. Strawmatt understood that Mr. Goar was claiming that he had become disabled under the Policy starting in January 2012. [Filing No. 75 at 2.]

As part of the claims process, Federated had a physician review medical information obtained by Federated and submitted by Mr. Goar.  [Filing No. 75 at 2.]  The physician concluded that the medical evidence did not support Mr. Goar's claim of disability.  [Filing No. 75 at 2.]  On August 16, 2012, Federated sent a letter to Mr. Goar denying his claim because: (1) Mr. Goar was claiming disability benefits from January 2012, and was not engaged in a regular occupation at that time as required by the Policy; and (2) the medical records Mr. Goar submitted "do not document an inability to perform your previous occupation as a jeweler."  [Filing No. 75 at 31-33.][3] The letter advised Mr. Goar that he could appeal Federated's decision within 180 days.  [Filing No. 75 at 33.]

Subsequently, Federated received a December 6, 2012 letter from counsel for Mr. Goar, stating that Mr. Goar was appealing Federated's decision.  [Filing No. 76 at 4-15.]  The letter stated that Mr. Goar became totally disabled in October 2010 when his employment at Smith's Jewelers was terminated, and therefore was engaged in his regular occupation as of the disability onset date.  [Filing No. 76 at 6-8.]  Counsel also set forth arguments supporting Mr. Goar's claim that he was disabled, and stated that Federated had engaged in bad faith by denying coverage.  [Filing No. 76 at 8-12.][4]

Federated responded to Mr. Goar's appeal in a February 8, 2013 letter, reiterating that Mr. Goar was not entitled to benefits because: (1) he was not totally disabled in October 2010 based

---

[3] Federated also denied coverage because its records indicated that the Policy had lapsed in 2008 due to a late premium payment, and the Policy did not provide coverage for a disability that began prior to the lapse in coverage.  [Filing No. 75 at 32.]  Federated later withdrew this basis for denial. [See Filing No. 76 at 4.]

[4] Counsel also suggested that interpretation of the Policy might be governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), [Filing No. 76 at 12-13], but the parties have not raised that issue and, accordingly, the Court will not consider it either.

on his statements during his recorded interview, his receipt of unemployment benefits, and the lack of evidence that a treating physician told him to stop working in October 2010; (2) the Social Security Administration did not find disability in 2010, but rather in July 2012; (3) the medical records do not indicate that he was totally disabled in October 2010; (4) he was not engaged in a regular occupation in January 2012, the correct date of his disability onset; (5) in any event, the medical records do not support a finding that he could not perform the duties of a jeweler in January 2012; and (6) the award of social security benefits does not necessarily mean that he was disabled for purposes of the Policy at that time. [Filing No. 76 at 16-20.] Federated advised counsel for Mr. Goar that Mr. Goar could request a second-level review within 60 days. [Filing No. 76 at 20.]

Mr. Goar's counsel responded to Federated in a March 21, 2013 letter, in which he argued, among other things, that Mr. Goar was entitled to benefits under the Policy because "an insured who was regularly employed in an occupation, leaving the occupation without beginning a new occupation, and subsequently files a claim for disability insurance should be insured as though his regular occupation was the former occupation." [Filing No. 76 at 21.]

Federated sent an April 4, 2013 letter to Mr. Goar's counsel, advising him that Federated could "find no information or reason to change our benefit determination," and that it was upholding its decision that Mr. Goar was not entitled to benefits under the Policy. [Filing No. 76 at 26.]

### H. The Litigation and Policy Rescission

Mr. Goar filed a Complaint against Federated in this Court on June 6, 2013, [Filing No. 1], and eventually a Third Amended Complaint, which is the operative complaint in this action, [Filing No. 48]. Mr. Goar alleges that he became disabled in September 2010, when his multiple sclerosis "had permanently impaired his fine motor skills, grip strength and steady hands, rendering him

unable to ever perform the duties of his occupation." [Filing No. 48 at 3.] Mr. Goar asserts claims for breach of contract (Count I); repudiation of the Policy (Count II); and breach of the implied duty of good faith and fair dealing (Count III). [Filing No. 48 at 5-7.]

On April 15, 2014, Federated rescinded the Policy and tendered the premiums to Mr. Goar. [Filing No. 76 at 2.] When Mr. Goar refused to accept the premiums, Federated tendered them to the Court. [Filing No. 76 at 2; Filing No. 45.]

### III.
#### DISCUSSION

Federated has moved for summary judgment on all of Mr. Goar's claims, arguing that: (1) Mr. Goar made fraudulent misrepresentations on the Application which have prejudiced Federated; (2) Mr. Goar's notice of his proof of loss was untimely; (3) Mr. Goar is not totally disabled under the Policy; and (4) there is no evidence that Federated engaged in bad faith. [*See* Filing No. 72.] Mr. Goar moved for partial summary judgment, asserting that he is entitled to judgment as a matter of law on his breach of contract claim because he is totally disabled under the Policy. [*See* Filing No. 96.] The Court will address the issues in the order they were raised by the parties. For purposes of the Court's analysis, it will assume without deciding that Mr. Goar was totally disabled as of September 2010.

#### A. Choice of Law

A federal court sitting in diversity[5] must apply the choice of law provisions of the forum state. *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice of law rules

---

[5] The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332, as Mr. Goar is a citizen of Indiana, Federated is a Minnesota corporation with its principal place of business there, and the amount in controversy exceeds $75,000 exclusive of interest and costs. [*See* Filing No. 16 at 1-2.]

determine the applicable substantive law"). The parties agree that Indiana law applies to Mr. Goar's claims. [*See* Filing No. 87 at 11-30 (Federated citing to Indiana law to support arguments) and Filing No. 97 at 22-48 (Mr. Goar relying upon Indiana law).] Absent a disagreement, the Court will apply Indiana law. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits....*Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.* We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)") (emphasis added).

### B. Breach of Contract and Repudiation Claims

#### 1. *Rescission Based on Representations in the Application*

Federated first argues that Mr. Goar made fraudulent misrepresentations in his Application, so Federated was entitled to rescind the Policy. [Filing No. 87 at 11-13.] Federated points to Mr. Goar's responses in the "Medical Information" section of the Application – specifically, that he did not disclose his treatment with Dr. Zapinski, that he did not advise Federated of his multiple sclerosis diagnosis, and that he denied any treatment for a nervous system disorder. [Filing No. 87 at 12.] Federated argues that Mr. Goar's intent to fraudulently induce Federated into issuing the Policy "can be inferred by his knowledge of his multiple sclerosis diagnosis no later than September 23, 2005 and his failure to disclose that information to Federated on or before October 19, 2005." [Filing No. 87 at 12.] Federated asserts that it would have investigated Mr. Goar's treatment with Dr. Zapinski had he disclosed it in his Application, and "would not have issued the policy to Plaintiff had it known that he was treating with a neurologist for a demyelinating disease

and had diagnostic tests that indicated that he had a demyelinating disease." [Filing No. 87 at 12.] Federated contends that it had a right to rescind the Policy, and that it tendered the premiums into the Court after Mr. Goar refused to accept them. [Filing No. 87 at 13.]

Mr. Goar responds that the contestability provision in the Policy did not allow Federated to contest the Policy for a misstatement in the Application when the disability began two years after the Policy had been in effect. [Filing No. 97 at 29-30.] He also contends that the evidence does not support a finding of intent to defraud on his part, that Federated was aware that the Application contained incorrect information through its agent or because an inquiry would have uncovered the information, that Federated continued to process the Application and accept premiums even after it knew information in the Application was false, and that Federated's rescission is barred by the six-year statute of limitations for fraud claims. [Filing No. 97 at 32-42.]

Federated replies that the Policy's contestability provision allows Federated to contest the Policy for fraudulent misrepresentations in the Application even after the Policy has been in effect for two years, but does not allow it to deny a claim and continue to collect premiums based on a misstatement in the Application (as opposed to a fraudulent misrepresentation) if the disability began after the two-year period. [Filing No. 99 at 4-5.] Federated also argues that Mr. Goar cannot establish the existence of a genuine issue of material fact regarding his fraudulent misrepresentations and omissions because Mr. Goar had a duty to disclose his diagnosis and treatment with Dr. Zapinski when he signed the Acknowledgment, and his failure to disclose that information was fraudulent. [Filing No. 99 at 6-15.]

### a. The Scope of the Contestability Provision

The Policy's contestability provision states:

> We may not contest this policy after it has been in force for 2 years during your lifetime. This does not apply to any fraudulent misrepresentation in your application. We won't use any misstatements in your application to deny a claim for benefits if your disability begins after such a 2 year period.

[Filing No. 73 at 11.]

The parties' key dispute is whether Federated can rely upon the contestability provision to rescind the Policy based on a fraudulent misrepresentation after the Policy has been in force for more than two years. Mr. Goar argues that it cannot because all three sentences of the contestability provision must be read in conjunction with each other and that, when that is done, the contestability provision means that Federated cannot use any misstatement (including a fraudulent misrepresentation) in the Application to deny a claim for benefits if the disability begins after the initial two-year period of the Policy. [Filing No. 97 at 32.] Federated maintains that the second sentence of the contestability provision allows it to rescind the Policy after the initial two-year period when there is a fraudulent misrepresentation in the application. [Filing No. 99 at 4-5.]

Indiana Code § 27-8-5-3 provides that every insurance policy delivered or issued for delivery in Indiana must contain certain provisions, including language similar to either one of the following provisions:

> TIME LIMIT ON CERTAIN DEFENSES: (A) After two (2) years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two (2) year period.

> OR

> INCONTESTABLE: After this policy has been in force for a period of two (2) years during the lifetime of the insured (excluding any period during which the

insured is disabled), it shall become incontestable as to the statements contained in the application.

Both variations of the first part of the provision must contain language similar to the following language:

No claim for loss incurred or disability (as defined in the policy) commencing after two (2) years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition, not excluded from coverage by name or specific description effective on the date of loss, had existed prior to the effective date of coverage of this policy.

Contestability provisions like the one at issue here "are now required by statute in most states because without them, insurers were apt to deny benefits on the grounds of a pre-existing condition years after a policy had been issued. This left beneficiaries, particularly those in life insurance settings, in the untenable position of having to do battle with powerful insurance carriers…." *Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995, 1000 (S.D. Ind. 1989). The Seventh Circuit Court of Appeals has categorized contestability provisions as being "'in the nature of a statute of limitation and repose,'…obliging the insurer to investigate the insured's medical history promptly else it become bound by representations contained on the insured's application." *Equitable Life Assur. Soc. of U.S. v. Bell*, 27 F.3d 1274, 1278 (7th Cir. 1994).

The Seventh Circuit has further noted that "a principal effect of these clauses is to preclude the insurer from attempting to rescind the policy after the requisite contestability period has expired on the ground that the insured made misrepresentations in the application," but has also recognized that "[l]ike a number of states, Indiana has given the insurer the option to include in paragraph (a) of the incontestability clause an exception for fraudulent misstatements….That version of the clause exempts from the period of limitation and repose the company's right to rescind the policy on the basis of fraud." *Id.* at 1279 (stating that "had Equitable opted to include [the fraudulent misrepresentation] exception, it could have claimed that the policy issued to Mr. Bell

- 17 -

was invalid"). This is precisely the option Federated chose – to exclude from the two-year limitation period its right to rescind for a fraudulent misrepresentation in the Application.

Mr. Goar's interpretation of the contestability provision would render the second sentence of that provision meaningless. Indeed, if the second sentence is not meant to exempt contesting the policy based on a fraudulent misrepresentation from the two-year limitation, then there is no reason to have the second sentence at all. This is consistent with the Seventh Circuit's recognition that an insurer can exempt from the general two-year limitation the situation where the insurer voids the policy based on a fraudulent misrepresentation. *Id.*; *see also Crowder Lawn and Garden v. Federated Life Ins. Co.*, 2011 WL 98815, *3 (S.D. Ind. 2011) (noting that "[a]lso under the policy's terms, Federated maintained the right to contest and revoke the policy for two years (and longer in the case of fraudulent misrepresentation in an application)"); *Warkentin v. Federated Life Ins. Co.*, 594 Fed. Appx. 900, 902 (9th Cir. 2014) (interpreting similar contestability provision and noting that "because the policy had been in force for more than two years, its express terms required a showing of fraud in order to rescind the contract").

Additionally, the Court finds that there is a distinction between the first two sentences of the contestability provision on the one hand, and the third sentence on the other. The first sentence refers only to "contesting" the Policy, and the second sentence qualifies the first sentence by exempting fraudulent misrepresentations from the limitations period in the first sentence. The third sentence refers only to "denying a claim for benefits." Accordingly, the insurer can void the policy even after two years when doing so is based on a fraudulent misrepresentation in the application, but cannot deny a claim for benefits based on a misstatement in the application if the disability began after the initial two year period. So, Federated cannot deny Mr. Goar's claim based on a

misstatement in the Application, but can rescind the Policy (and return his premiums) any time where there has been a fraudulent misrepresentation in the Application.

The Court finds that Federated was entitled to rescind the Policy based on a fraudulent misrepresentation in the Application even more than two years from the Policy's effective date. It now must consider whether the undisputed evidence shows that Mr. Goar in fact made fraudulent misrepresentations when he completed the Application.

### b. Fraudulent Misrepresentations

Under Indiana law, in order to show that Mr. Goar made fraudulent misrepresentations, Federated must demonstrate that Mr. Goar made a material misrepresentation or omission of fact, with knowledge or reckless disregard for the falsity of the statement, and that Federated relied on that misrepresentation in issuing the Policy. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997); *see also Smith v. State Farm Fire & Cas. Co.*, 2012 WL 5398199, *3 (N.D. Ind. 2012) (citing *Haire v. State Farm Fire & Cas. Co.*, 2011 WL 4732850, *2 (N.D. Ind. 2011)). The Court will address each element in turn.

#### i.    Material Misrepresentation or Omission of Fact

Federated points to several misrepresentations by Mr. Goar that it contends are false, including:

- His response to Part L.2. of the Application, which asked "Other medical providers seen in the past five years [other than personal physician] (include doctors, chiropractors, and therapists, date last seen and reason)." Mr. Goar simply put a line marking through the blank.

- His response to Part L.4. of the Application, which asked him to list "All Current Medications." Mr. Goar replied "None."

- His response to Part L.5.e. of the Application, which asked whether "[w]ithin the past 5 years, have you been told you had, or received treatment for any of the following conditions:…Brain or Nervous System Disorder; Multiple Sclerosis; Epilepsy or Seizures." Mr. Goar responded "No."

· His response to Part L.10. of the Application, which asked "[w]ithin the past 90 days, have you…been advised to have a diagnostic test other than an HIV test?" Mr. Goar responded "No."

· His response to Part L.11. of the Application, which asked "[w]ithin the past 5 years, have you had treatment for depression, stress, other psychological disorder, nerve or nervous system disorder?" Mr. Goar responded "No."

· His response to Part L.14. of the Application, which asked "[w]ithin the past 5 years, have you had any disease, disorder, syndrome or condition not listed above?" Mr. Goar responded "No."

[Filing No. 73 at 20; *see also* Filing No. 87 at 5-6; Filing No. 87 at 11-12.]

Mr. Goar responds to Federated's argument that the Application contained misrepresentations by arguing that Mr. Lemming, Federated's agent, filled out the Application and "[t]here does not exist any evidence [Mr.] Lemming gave [Mr. Goar] a copy of the application so [he] could read along while [Mr.] Lemming asked the questions. This would have reduced the confusion and reduced the likelihood of [Mr. Goar] giving mistaken answers." [Filing No. 97 at 33.] Mr. Goar also contends that not all of the Application responses Federated points to are misstatements because: (1) he was not prescribed any medications during his emergency room visit or by Dr. Zapinski on August 11, 2005, but was only prescribed Copaxone on September 23, 2005; and (2) Dr. Zapinski did not make a diagnosis at his August 11, 2005 or August 18, 2005 visits, but only believed he suffered from multiple sclerosis on September 23, 2005. [Filing No. 97 at 34.] Finally, Mr. Goar contends that Federated's underwriting department should have known his responses to the Application questions regarding diagnostic tests were incorrect because it had obtained a copy of his emergency room records which reflected conflicting information. [Filing No. 97 at 34.]

The Court does not find merit in any of Mr. Goar's attempts to explain away his material misstatements on the Application. Mr. Goar essentially asks the Court to make certain inferences, but has presented no evidence to indicate anything other than what is reflected on the documents

from which those inferences could be drawn. First, Mr. Goar tries to blame Mr. Lemming for the misstatements, but never asserts that Mr. Lemming recorded his answers incorrectly on the Application. [*See* Filing No. 97 at 33.] And Mr. Goar ignores the fact that he signed his name at the end of the Application under a statement that provides "I represent that the statements and answers given in this application are true, complete, and correctly recorded." [Filing No. 73 at 22.] Mr. Goar has not presented any evidence – and there is none – that he was not given an opportunity to review the Application, or that he did not in fact sign it. *See Brennan v. Hall*, 904 N.E.2d 383, 387 (Ind. Ct. App. 2009) ("It makes no difference if a potential insured provides accurate information to an insurance agent, but the agent incorrectly fills out the application, so long as the potential insured had an opportunity to review the application and signs it….An applicant who signs an application containing material misrepresentations is chargeable with the knowledge of the false statements and must be held to have adopted them as his or her own").

Second, even if there were questions of fact regarding whether Mr. Goar was prescribed medication, underwent diagnostic tests, and was ultimately diagnosed with multiple sclerosis before the date he signed the Application, Mr. Goar completely ignores the fact that he signed an Acknowledgement on October 19, 2005 in which he acknowledged that he was not aware of any information which might affect Federated's willingness to issue the Policy, and represented that "there have been no changes in (a) my health, or (b) the way I would respond to any question [in the Application] (if again asked on the date signed below)." [Filing No. 73 at 23.] There is no dispute that Mr. Goar had undergone diagnostic testing, was told by Dr. Zapinski that she believed he suffered from multiple sclerosis, and was prescribed medication for multiple sclerosis by at

least September 23, 2005. These events all took place well before Mr. Goar signed the Acknowledgement on October 19, 2005, and he did not correct the accuracy of his representations in the Application at that time.

Finally, Mr. Goar's attempt to pin his failure to disclose the fact that he underwent diagnostic tests on Federated's underwriting department is unavailing. Mr. Goar appears to argue that Federated should have known that his answer to the Application question regarding diagnostic tests was false because he disclosed his August 2, 2005 emergency room visit to Federated and the hospital records reflect that he underwent an MRI. [Filing No. 97 at 34.] But this does not change the fact that Mr. Goar answered "no" to the Application question regarding whether he had been advised to have a diagnostic test within the past 90 days. Additionally, Mr. Goar ignores the fact that Dr. Zapinski advised him to have a spinal tap at his August 18, 2005 visit with her, which he also did not disclose on the Application.

The Court finds that Mr. Goar made several material misstatements on the Policy Application or, at the very least, statements that shortly thereafter became inaccurate and were not corrected before Mr. Goar signed the Acknowledgement.

        ii.     <u>Statements Made With Knowledge of Falsity or Reckless Disregard for Truth</u>

Federated argues that Mr. Goar's fraudulent intent can be inferred "based on the timing of his Application, which was less than a week after his August 18, 2005, office visit with Dr. Zapinski and his failure to disclose his treatment with Dr. Zapinski even though he had a duty to disclose that information." [Filing No. 87 at 13 (emphasis omitted).]

Mr. Goar responds that there is a question of fact regarding his state of mind, because "[t]he method by which [Mr.] Lemming completed the application raises several questions whether [Mr. Goar] understood or heard each question or whether the inaccuracy in the application was due to

miscommunications or misunderstandings." [Filing No. 97 at 34.] Mr. Goar also points to alleged inaccuracies in a policy application completed by Mr. Lemming on behalf of Mr. Goar's brother, Van, and Mr. Lemming's failure to include the existence of a Prudential disability policy on either Mr. Goar's or Van Goar's Federated policy. [Filing No. 97 at 35.] Mr. Goar notes that when he completed an employee enrollment form a year after the Policy was issued for a group health policy issued to Smith's Jewelers, he disclosed that he suffered from multiple sclerosis which was diagnosed in October 2005, that he took Copaxone, and that Dr. Zapinski was his treating physician for multiple sclerosis. [Filing No. 97 at 35.]

On reply, Federated argues that Mr. Goar's signature on the Application and the Acknowledgement make him responsible for any misstatements and omissions, so the fact that Mr. Lemming completed the Application is irrelevant, that any incorrect information on Van Goar's application has no bearing on Mr. Goar's Application and Acknowledgement, and that Mr. Goar mischaracterizes the evidence he relies upon. [Filing No. 99 at 11-15.]

Under Indiana law, "[w]here one has a duty to disclose, concealment implies deceit, and the procurement of a contract through the concealment of facts which one is in duty bound to disclose, amounts to fraud." *Colonial Penn Ins. Co.*, 690 N.E.2d at 675 (quoting *Rushville Nat'l Bank v. State Life Ins. Co.*, 1 N.E.2d 445, 450 (Ind. 1936)). The Court finds that the undisputed facts show that Mr. Goar made the misstatements in the Application (and later verified them when he signed the Acknowledgement) with knowledge of their falsity.

Tellingly, Mr. Goar never claims that he did not know the material misstatements were false, or that he signed the Acknowledgement honestly believing that the information in the Application was accurate and that his health had not changed. Perhaps this is because such a position is completely contradicted by the undisputed facts or Mr. Goar wishes to avoid making a false

statement under oath. Mr. Goar again tries to blame Mr. Lemming, but, as noted above, he has not presented any evidence that Mr. Lemming incorrectly recorded his answers to the Application questions, nor has he even claimed that this was the case. Additionally, even if there are inaccuracies in Van Goar's application that was completed by Mr. Lemming, that has no bearing on Mr. Goar's knowledge when he signed his Application and, later, the Acknowledgement that affirmed the truth of the information in the Application. And finally, Mr. Goar's answers on the enrollment materials for the group health insurance policy were not part of the Application, Acknowledgement, or Policy under which Mr. Goar seeks coverage here, and Federated was under no obligation to cross reference the information he provided in the Application with his disclosures in that separate context. *See Foster v. Auto-Owners Ins., Co.*, 703 N.E.2d 657, 660 (Ind. 1998) ("[the insured] cites no authority from this Court or any other court holding that the submission of applications, some of which contain complete and accurate information, cures material omissions in another application. [The insured] designated no evidence suggesting that in the midst of processing hundreds or thousands of applications [the insurer] did in fact cross-check the accuracy of an application against others submitted by the same applicant. As a matter of law we find no obligation to do so. Imposing this obligation would create the opportunity to play a catch-me-if-you-can game that would ultimately generate additional costs to insurers and no legitimate benefit to insureds").

The Court also places great significance on the timing of Mr. Goar's misrepresentations. He completed the Application just six days after Dr. Zapinski told him she suspected he had multiple sclerosis and ordered diagnostic tests. He then signed the Acknowledgment twenty-six days after Dr. Zapinski advised him she believed he had multiple sclerosis and prescribed medication used to treat multiple sclerosis. This timing is compelling.

In short, Mr. Goar has not set forth any evidence that his material misrepresentations were somehow innocent. The Court finds that no reasonable jury could conclude that he did not know his statements were false.

### iii.    Reliance on Material Misstatements

Federated asserts that it relied upon Mr. Goar's representations, would have investigated his treatment with Dr. Zapinski, and would not have issued the Policy "had it known that [Mr. Goar] was treating with a neurologist for a demyelinating disease and had diagnostic tests that indicated he had a demyelinating disease." [Filing No. 87 at 12.]

In response, Mr. Goar does not dispute that Federated relied upon the misstatements, but instead appears to contend that the reliance was not justified. He argues that Mr. Lemming was Federated's agent, and that he and Federated's underwriting department knew the Application contained false information about his health. [Filing No. 97 at 36-37.] Specifically, Mr. Goar asserts that Federated's underwriting department, through Federated's Life Underwriting Analyst Gerry Schroepfer, knew that the answer to Question 10 in the Application, regarding whether, within the past 90 days, Mr. Goar had been admitted to a hospital or advised to have any diagnostic tests, was false. [Filing No. 97 at 37.] Mr. Goar also contends that Federated could have asked him whether he had followed up with certain doctors, or could have asked those doctors directly about any treatment they provided to Mr. Goar. [Filing No. 97 at 37.] He argues that there were four occasions when Federated "failed to make a proper inquiry," including: (1) when it did not ask him whether he had followed up with any physicians after his emergency room visit; (2) when Mr. Goar disclosed his multiple sclerosis diagnosis and treatment on the September 2006 group

health insurance enrollment papers; (3) when Mr. Goar disclosed Dr. Zapinski as a treating physician in his claim for disability benefits; and (4) when it received Dr. Mattson's records, which described Mr. Goar's medical history of multiple sclerosis. [Filing No. 97 at 38-39.]

Federated replies that Mr. Goar's fraud "trumps" any negligence on its part in failing to investigate Mr. Goar's health. [Filing No. 99 at 16.] It also argues that the "failures" Mr. Goar points to are "flawed are factually inaccurate" because (1) Mr. Goar informed Federated that he had not had further problems after his emergency room visit and had not followed up with any doctors, and the records said the condition was resolved; (2) Mr. Goar has not presented any evidence that Mr. Lemming saw Mr. Goar's health insurance enrollment form disclosing his multiple sclerosis, and Mr. Lemming testified that he did not know Mr. Goar had multiple sclerosis until 2014; (3) Ms. Strawmatt was investigating whether Mr. Goar was disabled in 2012, and would not have thought to inquire regarding Mr. Goar's records with Dr. Zapinski in 2006; and (4) Ms. Strawmatt was not investigating whether Mr. Goar had lied in completing the Application when she reviewed Dr. Mattson's records, so would not have thought to consider Mr. Goar's health when he completed the Application in light of those records. [Filing No. 99 at 17-20.]

Under Indiana law, "the insurer may rely on representations of fact in [a policy] application without investigating their truthfulness," and has "no duty to look beneath the surface" of those application representations. *Allied Property and Cas. Ins. Co. v. Good*, 938 N.E.2d 227, 232 (Ind. Ct. App. 2010) (quoting *Colonial Penn Ins. Co.*, 690 N.E.2d at 674). In support of its argument that it relied upon Mr. Goar's statements in issuing the Policy, Federated submitted Mr. Schroepfer's Affidavit in which he stated that:

· Had Mr. Goar identified his treatment with Dr. Zapinski in the Application,
  Federated would have requested records from Dr. Zapinski prior to making a
  final underwriting decision;

- Had Mr. Goar answered "yes" to questions 5(e), 11, or 14 on the Application, or identified Dr. Zapinski in response to question 2, Mr. Schroepfer would not have approved the Application without investigating Mr. Goar's medical condition further and obtaining Dr. Zapinski's records;

- Had Mr. Schroepfer obtained Dr. Zapinski's records prior to his approval of the Application, he would have declined the Application; and

- Had Mr. Goar supplemented his Application after August 24, 2005 and disclosed the treatments with Dr. Zapinski and/or Dr. Zapinski's diagnosis of multiple sclerosis, Mr. Schroepfer would have declined the Application; and a multiple sclerosis diagnosis required an automatic rejection for disability insurance under Federated's underwriting guidelines in place when Mr. Goar submitted the Application.

[Filing No. 73 at 2.]

Mr. Goar does not contest Mr. Schroepfer's statements, instead focusing on what Federated could have done to discover his fraud earlier. But Federated was under no duty to double-check Mr. Goar's representations on the Application, especially given that Mr. Goar reaffirmed the correctness of those representations when he signed the Acknowledgement. And, in any event, none of the four instances Mr. Goar points to would have caused a reasonable insurer to discover the fraud. The emergency room records stated that Mr. Goar's condition was resolved, and Mr. Goar represented on the Application that he had not been treated by any doctors other than his primary physician within the past five years. The health insurance enrollment form, as discussed above, was not part of the Policy, Application, or Acknowledgement, and Federated had no reason or obligation to cross-reference the form with the Application and Acknowledgment. Finally, Ms. Strawmatt could not have been expected to figure out that Mr. Goar had lied on the Application based on her investigation into whether Mr. Goar was disabled in 2012 or her review of Dr. Mattson's records. In short, even if any negligence on Federated's part could trump Mr. Goar's fraud, no reasonable jury could conclude that Federated was negligent. Federated was entitled to rely on the representations in the Policy Application and Acknowledgement, and it is undisputed

that Federated did so in issuing the Policy. *See Allied Property and Cas. Ins. Co.*, 938 N.E.2d at 233 (policy was void *ab initio* where insurer submitted affidavit from underwriter stating that if insured had disclosed certain facts on policy application, insurer would not have issued the policy or would have charged a higher premium).[6]

In sum, the contestability provision allowed Federated to rescind the Policy even after the two-year initial period for fraudulent misrepresentations and, because Mr. Goar's misstatements on the Application and Acknowledgement constituted fraudulent misrepresentations, it properly rescinded the Policy.[7] Accordingly, Federated is entitled to summary judgment on Mr. Goar's breach of contract and repudiation claims.

### 2. *Grounds for Denial of Mr. Goar's Claim*

Because the Court has already found that Federated was entitled to rescind the Policy, it need not address Federated's other arguments in support of its denial of Mr. Goar's claim. The Court finds as a matter of law, however, that at least one of those other grounds – Mr. Goar's

---

[6] Mr. Goar argues that Federated cannot now claim that he fraudulently misrepresented facts in the Application because the statute of limitations for a fraud claim is six years, and the misrepresentations occurred in 2005 which was outside the limitations period. [Filing No. 97 at 41-42.] Mr. Goar has not provided any authority for the proposition that the limitations period for a fraud claim governs the assertion of the affirmative defense of rescission based on a fraudulent misrepresentation. But, even assuming the six-year limitations period applies in this context, the Court has already found that Federated could not have reasonably known of Mr. Goar's misstatements until it began investigating his 2012 claim and actually discovered the fraudulent misrepresentations. Accordingly, the statute of limitations would not bar rescission based on Mr. Goar's fraudulent misrepresentations.

[7] Mr. Goar also argues that Federated waived its right to rescind the Policy because "[t]here are multiple times during Federated's dealings with [Mr. Goar] they recognized the application was false, but continued to process [Mr. Goar's] application for disability insurance and accept premiums." [Filing No. 97 at 39.] As discussed above, the Court rejects any notion that Federated somehow should have discovered the falsity of Mr. Goar's statements on the Application before he made a claim. The facts here do not support Mr. Goar's waiver argument. *Cf. Estate of Luster v. Allstate Ins. Co.*, 598 F.3d 903, 908 (7th Cir. 2010) (applying Indiana law and holding that insurer waived right to rescind homeowners policy because it accepted premiums for two years after learning house was unoccupied while investigating fire damage claim).

failure to provide timely notice of his disability – supports Federated's denial of benefits under the Policy.

The Policy provides:

> Written notice of your disability must be sent to our Home Office or to our representative. Send it within 60 days[8] after the start of disability or as soon as reasonably possible. In any event, the required notice must be given no later than one year from the date of disability unless you were not then competent to make the claim.

[Filing No. 73 at 10.]

Federated argues that Mr. Goar claims he was disabled in late September 2010, but did not provide notice to Federated of his claim until May 2012. [Filing No. 87 at 13.] It asserts that it was prejudiced by this late notice because, for example, it could not have a physician examine Mr. Goar at the alleged onset of his disability in 2010. [Filing No. 87 at 15.] Mr. Goar does not dispute this timing, but argues instead that Federated was not prejudiced by the late notice because he did not rely upon any medical evidence to establish that he was disabled in September 2010, but rather only relied on testimony from family members and co-workers. [Filing No. 97 at 42.]

Under Indiana law, the duty to notify the insurer is a condition precedent to the insurer's liability under the policy. *Miller v. Dilts*, 463 N.E.2d 257, 261 (Ind. 1984). The Indiana Supreme Court has stated:

> The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice. Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit. This is not in conflict with the public policy theory that the court should seek to protect the innocent third parties from attempts by insurance companies to deny liability for some insignificant failure to notify. The

---

[8] Both parties refer to a 90-day period to provide notice, [*see, e.g.*, Filing No. 97 at 44; Filing No. 99 at 22], but the Policy provides that notice must be given within 60 days and, in any event, no later than within one year, [Filing No. 73 at 10].

injured party can establish some evidence that prejudice did not occur in the particular situation.

*Id.* at 265.

The Court finds that Federated is entitled to a presumption of prejudice based on Mr. Goar's late notice, and that Mr. Goar has not presented any evidence to rebut that presumption. Mr. Goar's argument that he did not rely on medical evidence, but rather only on the testimony of his family members and co-workers, does not rebut the presumption of prejudice. Federated was entitled to obtain contemporaneous medical evidence within a year of Mr. Goar's disability date in order to determine for itself whether Mr. Goar was in fact disabled. The evidence Mr. Goar relied upon to support his claim of disability is irrelevant and does not affect Federated's entitlement to gather its own evidence. Mr. Goar's obligation to provide notice of his disability within the time required under the Policy was a condition precedent to receiving coverage, he failed to comply with the notice provision, and that failure is an additional reason why Mr. Goar's breach of contract and repudiation claims fail as a matter of law.

### C. Bad Faith Claim

Mr. Goar alleges that Federated acted in bad faith by rescinding the Policy based on misstatements in the Application more than two years after the Policy was issued and "when Federated knew they had no right to rescind the [Policy]." [Filing No. 48 at 6-7.]

"Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008). This duty includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* "A finding of bad faith requires evidence of a state of mind reflecting

dishonest purpose, moral obliquity, furtive design, or ill will. A bad faith determination inherently includes an element of culpability." *Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 714 (Ind. Ct. App. 2007).

The Court has already found as a matter of law that Federated's rescission of the Policy was consistent with the contestability provision, and also that Federated was entitled to deny Mr. Goar's claim because he did not comply with the Policy's notice provision. Accordingly, Federated cannot have acted in bad faith. *See id.* at 714 (insured must prove "additional element of conscious wrongdoing" in order for bad faith claim to succeed). Simply put, Federated did not act in bad faith in connection with Mr. Goar's claim under the Policy. Indeed, to the extent anyone acted in bad faith in the parties' dealings, it was Mr. Goar.

In sum, the Court finds that, based on the evidence, Federated was entitled to rescind the Policy under the contestability provision or to deny coverage under the Policy's notice provision. For that reason, Mr. Goar's breach of contract and repudiation claims fail as a matter of law. Because the Court has found that there is no evidence that Federated engaged in any wrongdoing in rescinding the Policy or denying coverage for Mr. Goar's claim, it also finds that Federated is entitled to summary judgment on Mr. Goar's bad faith claim.[9]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Federated's Motion for Summary Judgment, [Filing No. 72], and **DENIES AS MOOT** Mr. Goar's Motion for Partial Summary Judgment, [Filing No. 96]. Final judgment shall enter accordingly.

---

[9] Because the Court has found that Federated was entitled to rescind the Policy or deny coverage for Mr. Goar's claim, it need not consider whether Mr. Goar was actually disabled so denies Mr. Goar's Motion for Partial Summary Judgment as moot.

The Clerk of the Court shall pay the funds deposited by Federated which represent Mr. Goar's premium payments, [*see* Filing No. 45], along with any interest earned while those funds have been deposited with the Court, to Mr. Goar as soon as practicable.

April 10, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**